**UNITED STATES of America,**

v.

**Dean SINCLAIR, a/k/a Tony Hall, Defendant.**

**Crim. No. 90–0198–01–LFO.**

United States District Court, District of Columbia.

July 31, 1990.

Thomas J. Hibarger, Asst. U.S. Atty., Washington, D.C., for U.S.

Joseph R. Conte, Bond, Conte & Norman, P.C., Washington, D.C., for defendant.

### MEMORANDUM

OBERDORFER, District Judge.

Defendant Sinclair is charged with possession with intent to distribute more than five grams of cocaine base. Sinclair has moved to suppress evidence seized from

the house in which he was arrested, arguing that the police failed to knock and announce their presence in violation of 18 U.S.C. § 3109.

## I.

At a supression hearing held on June 6, 1990, Police Officer William P. Shirk testified to the following facts. On April 3, 1990 at approximately 10:00 p.m., Officer Shirk, along with eight other officers, arrived at 2707 Robinson Place, S.E., apartment # 203, Washington, D.C., for the purpose of executing a search warrant. Officer Shirk gave the door a heavy slap with his open palm. The door swung open. He said "Police, Search warrant," in a loud voice. On direct examination he testified that he heard people moving about; on cross examination he clarified that he heard shuffling feet and noise resembling a chair falling over. He entered. When he entered, people were getting up from a table. The time elapsed was one to two seconds.

Defendant presented two witnesses, both friends of the defendant, who had been inside the house when the police entered. Witness Sannie Williams testified that the police burst in, with a "boosh" sound that sounded like they hit the door with an object, and that they did not identify themselves. Witness Leonard Hight testified that he heard a "boom" and the police burst in with guns drawn.

Thus, defendant's witnesses contradicted the officer's testimony as to whether he announced himself. However, the officer's testimony was credible: the officer announced.

## II.

The knock and announce statute, 18 U.S.C. § 3109, states:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

The Supreme Court discussion of the purpose and history of the statute in *Miller v. United States*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958) revealed that the common law recognized a limited authority in law enforcement officers, after announcing themselves, to break the door of a home to arrest for felony. *Id.* at 307–09, 78 S.Ct. at 1194–96.

The statute's condition that the officer be "refused admittance" does not require actual or affirmative refusal. Constructive refusal, established only by examination of the circumstances of the entry, is sufficient to satisfy the statute. *See United States v. Bonner*, 874 F.2d 822, 824 (D.C.Cir. 1989); *Masiello v. United States*, 317 F.2d 121, 122 (D.C.Cir.1963). *Bonner* held that a time period of ten to twelve seconds between the first knock and the forced entry satisfied the statute where the officers were searching for drugs which are easily destroyed and whose traffickers often carry firearms, where the officers knocked and announced twice during the ten to twelve second period, and where the officers heard sounds consistent with refused admittance and destruction of drugs, such as scampering sounds.

## III.

Moving to suppress the evidence seized on the grounds that the officers did not comply with the knock and announce statute, defendant argues that there was no constructive refusal and that there was no showing at the hearing on the motion that the officers interpreted the sounds they heard as exigent circumstances. Defendant contends that, though the facts at hand are similar to those in *Bonner* to the extent that the officers were searching for drugs, *Bonner* can be distinguished from the instant action. Defendant argues that in *Bonner* the police knocked and announced twice whereas in this case there is disputed testimony as to whether there was even one knock and announce. Defendant also notes that in this case Detective Shirk did not testify as to whether he interpreted the shuffling and falling chair as sounds consistent with refusal to admit or destruc-

tion of evidence. Lastly, defendant contends that there is a significant difference between the ten to twelve seconds wait in *Bonner* and the one to two second wait in the instant action.

The government opposes defendant's motion on several grounds. First, the government would have the Court find that, once faced with an open door, the police had no obligation to comply with 18 U.S.C. § 3109. However, an officer who opens a closed, but unlocked, door violates the statute. *Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968).

> Considering the purposes of § 3109, it would be a "grudging application" to hold ... that the use of "force" is an indispensible element of the statute. To be sure, the statute uses the phrase "break open" and that connotes some use of force. But linguistic analysis seldom is adequate when a statute is designed to incorporate fundamental values and the ongoing development of the common law.

*Id.* at 589, 88 S.Ct. at 1758 (Footnote omitted.)

The government cites several cases from other circuits which it asserts demonstrate that there is unanimous agreement that entering through an open door does not violate Section 3109. In these cases, however, the police entered in the presence of a defendant and in many of them, the entry was not to a private home. *E.g., United States v. Remigio*, 767 F.2d 730, 733 (10th Cir.), *cert. denied* 474 U.S. 1009, 106 S.Ct. 535, 88 L.Ed.2d 465 (1985) (entry with defendant present); *United States v. Di Stefano*, 555 F.2d 1094, 1100 n. 5 (2d Cir.1977) (defendant present); *United States v. Lopez*, 475 F.2d 537, 541 (7th Cir.), *cert. denied*, 414 U.S. 839, 94 S.Ct. 89, 38 L.Ed.2d 74 (1973) (entry into hotel room with defendant present); *United States v. Johns*, 466 F.2d 1364, 1365 (5th Cir.1972) (entry into gambling building with defendant present). Furthermore, controlling precedent in this circuit is to the contrary. In *Keiningham v. United States*, 287 F.2d 126 (D.C.Cir. 1960), the court clearly stated that "a person's right to privacy in his home ... is governed by something more than the fortuitous circumstance of an unlocked door and ... the word 'break' as used in 18 U.S.C. § 3109 means "enter without permission." *See also Hair v. United States*, 289 F.2d 894, 897 (D.C.Cir.1961).

▇ The government's argument that the plain meaning, underlying purpose, and common law underpinings of section 3109 do not support the conclusion in *Keiningham* is unconvincing. To hold that following a knock and announce, a police officer may, consistent with 18 U.S.C. § 3109, enter through a door that has fallen open from the force of the knock, would significantly curtail the privacy right which is the central purpose of the Fourth Amendment. A person who has no door nonetheless has rights to be free from police intrusion in the home. Though it may be reasonable to expect that a person whose door happens to be physically open maintains somewhat, but only slightly, less privacy than a person whose door is closed but unlocked, that right is still significant. Discussing the history of the statute in *Miller*, the Supreme Court cited the following remarks attributed to William Pitt, Earl of Chatham, speaking before Parliament in 1763:

> The poorest man may in his cottage bid defiance to all the forces of the Crown. It may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter; but the King of England cannot enter—all his force dares not cross the threshold of the ruined tenement!

*Id.* 357 U.S. at 307, 78 S.Ct. at 1195. (Citations omitted.) It is "crossing the threshold" as expressed by William Pitt, and "entry without permission," as expressed by the court in *Keiningham*, that is prohibited. The threshold of the ruined tenement or the door with a faulty mechanism remains protected.

## IV.

▇ It is clear, and the government concedes in this motion, that in and of itself a wait of one to two seconds after a knock and announce is an insufficient time in which to establish constructive refusal to admit. Government's Supplemental Memorandum in Opposition to Defendant's Mo-

tion to Suppress at 6. *See United States v. DeLutis*, 722 F.2d 902, 909 (1st Cir.1983) (upholding entry after twenty seconds with no exigent circumstances and surveying cases upholding delays from ten seconds to twenty seconds). The question remains, therefore, whether sounds heard by the officers before entry could be interpreted as constructive refusal or created exigent circumstances justifying the police officers' virtually immediate entry.

As in other areas of Fourth Amendment doctrine, courts have been sympathetic towards police officers skirting the normal knock and announce procedures when they hold a reasonable belief that a particular circumstance presents danger or that the evidence they seek may be destroyed. *See, e.g., Bonner*, 874 F.2d at 825; *United States v. Allende*, 486 F.2d 1351, 1353 (9th Cir.1973) *cert. denied*, 416 U.S. 958, 94 S.Ct. 1973, 40 L.Ed.2d 308 (1974); *Masiello*, 317 F.2d at 122. Certainly, after waiting several seconds and hearing sounds that indicate motion away from the door, an officer may assume constructive refusal and exigent circumstances permitting a break and entry. In *United States v. Barrett*, 725 F.Supp. 9 (D.D.C.1989), the court denied a motion to suppress for failure to comply with 18 U.S.C. § 3109 where the police, after knocking and announcing, waited five to ten seconds and heard footsteps moving away from the door. In *United States v. Mitchell*, 783 F.2d 971, 973 (10th Cir.) *cert. denied*, 479 U.S. 860, 107 S.Ct. 208, 93 L.Ed.2d 138 (1986), the court denied such a motion where the police waited only three to five seconds after the knock and announce, and "heard sounds of people moving inside the house [that] suggested the occupants were not moving towards the door." *See also Bonner*, at 826 (upholding ten to twelve second delay and surveying cases upholding delays from four to five seconds to twenty seconds).

Here though, in contrast to previous cases, the officer waited only one to two seconds and heard only scuffling noises and a sound like a chair falling over before entering. Neither the defendant nor the government cites, and the Court has not found, any case denying (or even granting) a motion to suppress for violation of 18 U.S.C. § 3109 where the officer waited only one to two seconds. It is difficult to imagine that in one to two seconds the police were able to give any interpretion at all to the sounds they heard, much less a considered judgment that the sounds reflected constructive refusal or likely destruction of evidence. Moreover, reflection on the scenario and the sounds permits a reasonable conjecture that persons inside a house who hear a bang and see the door swing open could be surprised and react suddenly— could even, if leaning backwards in a chair balanced on two legs, fall backwards in that chair. The officer testified that when he entered he "saw people getting up from the table," thus the sounds could have been just as easily indicative of persons getting up to admit the officers as to impede their entry. Consequently, the facts, taken as a whole, can not be interpreted as either constructive refusal or as exigent circumstances involving the possible destruction of evidence.

The government argues that officers were justified in entering due not only to the possible destruction of evidence but also to potential danger. This contention comes close to but ultimately fails in being convincing. The officer knocked and announced, saw the door swing open and heard sudden sounds including sounds of shuffling and a falling chair. Though the sounds could have been interpreted as indicative of persons reaching for weapons, again the officers barely had time to make any such assessment. Again, the sounds could have been made by persons rising from their chairs to come to the door. If these sounds could be so interpreted then virtually any sound could be so interpreted. Though drug traffickers do often carry firearms, to hold that in these circumstances the police may violate the knock and announce requirements is to reduce those requirements to a formality rather than a protection against unreasonable searches.

The officers' departure in this case from section 3109's requirements was substantial. *See Bonner*, 874 F.2d at 827 (departure from section's requirements was "exceedingly slight"). A door that opens of its own accord from the force of the officer's

knock does not eliminate the requirements of section 3109. One or two seconds was not enough time in the circumstances here to hear and assess the shuffling and falling sounds inside. The sounds reported here do not establish circumstances so exigent as to eliminate any obligation to knock and announce; nor does the government advance such a claim. Police officers executing search warrants must enter houses in which drug traffickers are present and they are entitled to considerable discretion in assessing the risks and taking measures to protect themselves and the evidence they seek. However, here, two seconds were not enough in the absence of a much stronger showing of exigent circumstances.

Accordingly, an accompanying order will grant defendant's Motion to Suppress.

## ORDER

For the reasons stated in the accompanying Memorandum, it is this 30th day of July, 1990, hereby

ORDERED: that defendant's Motion to Suppress Physical Evidence should be, and is, hereby GRANTED.